IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA THOMAS, as personal
representative of the estate of
JANETTE SMITH

                                    Civil No. 02-3090-CO

            Plaintiff,              FINDINGS AND RECOMMENDATION

      v.

FRED MEYER JEWELRY, INC.,
et al.,

            Defendants.


COONEY, Magistrate Judge:

      Plaintiff brings this action against defendants Fred Meyer

Jewelry, Inc. and Fred Meyer Stores, Inc. alleging claims for

sexual harassment, gender discrimination, and retaliation in

violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e et

seq., gender discrimination, and retaliation in violation of ORS

Chapter 659, wrongful discharge under state common law, and

wrongful death.  Plaintiff seeks economic and non-economic damages,
costs, disbursements, and attorney's fees.  Defendants move for
summary judgment (#55, #60).  Defendants also move to strike
certain exhibits (#78).

**Motion to Strike**

Defendants move to strike Exhibit B, which consists of two
letters dated January 2, 2002, and February 15, 2002.  The January
letter is an unsigned typed letter Ms. Smith provided to
defendants.  The February letter is a typed and signed letter Ms.
Smith provided to defendants.  Ms. Smith provided both letters to
her counsel.

Defendants argue that the letters are inadmissible hearsay,
and they do not fit within any of the exceptions listed in Federal
Rules of Evidence (FRE) 803 or 804.  Defendants concede the January
letter is admissible for the limited purpose of showing Ms. Smith
notified defendants of issues to investigate.

In response, plaintiff argues that the January 2, 2002 letter
from Janette Smith to defendants is admissible to show: defendants
were on notice of plaintiff's claims of sexual harassment when they
fired her; Ms. Smith's then existing physical and mental condition
admissible under Federal Rules of Evidence (FRE) 803(3); Ms.
Smith's state of mind; the manager, Mr. Salas, made comments that
a trier of fact could find were sexually harassing; and statements
in other Exhibits are corroborated.  Plaintiff argues the February

letter is admissible, because it is a business record, and it shows that Ms. Smith had intentions to return to work, if it was in Grants Pass.

In reply, defendants argue: Ms. Smith's state of mind regarding her intent to leave work or her belief that she was ill is irrelevant; the letters are being offered to prove the truth of Ms. Smith's out of court statements; plaintiff has not identified an admissible non-hearsay purpose; and the February letter is not a business record, but improper hearsay.

For evidence to qualify for the statement of present mental, emotional condition exception, Rule 803(3) requires either 1) statement of declarant's then-existing state of mind at issue in action, or 2) statement of declarant's then-existing state of mind to prove declarant's subsequent conduct. Jones, Rosen, Wegner & Jones, RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL TRIALS & EVIDENCE (The Rutter Group 2004), ¶¶8:2375, 8:2410 ff. Under 803(3), evidence is not hearsay if offered as circumstantial evidence of declarant's state of mind, but is hearsay if offered as direct evidence of declarant's state of mind. Id. at ¶¶8:1891, 8:2375 ff. The requirements for admissibility are: 1) contemporaneity; 2) no time for reflection; 3) relevance; 4) statement of the person whose state of mind is at issue; and 5) statement may be self-serving. Id. at ¶¶8:2380-84, 8:3291. Plaintiff has not satisfied these requirements.

For evidence to qualify for the business record exception, Rule 803(6) requires either 1) testimony of the custodian or other qualified witness that the record was made at or near the time by or from information transmitted by a person with knowledge and kept in the course of regularly conducted business activity as a regular practice of the business; or 2) certification that complies with Rule 902(11)[1], Rule 902(12)[2], or a statute permitting certification. Id. at ¶8:2610.  Plaintiff has not demonstrated that Exhibit B qualifies for the business record exception.

In addition, other unchallenged Exhibits contain the same information that plaintiff is attempting to admit.  Therefore, most of plaintiff's responses to defendants' motion to strike Exhibit B are moot.

---

[1] Rule 902(11) provides for certified domestic records of regularly conducted activity and requires the original or a duplicate of a domestic record of regularly conducted activity that would be admissible under 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; B) was kept in the course of regularly conducted activity; and C) was made by the regularly conducted activity as a regular practice.  A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

[2] Rule 902(12) concerns the certification of foreign records and is not relevant to this case.

In the one instance where information in Exhibit B is not contained in another Exhibit, Plaintiff's Response to Defendants' Concise Statements of Material Facts in Support of Motion Two ¶8, plaintiff fails to respond to defendants' objection to its use.

Based on the foregoing, Exhibit B is stricken.

Defendants move to strike Exhibit I, which consists of twelve pages from Ms. Smith's diary provided to plaintiff's counsel by the Josephine County Sheriff's Department. Defendants argue that: Exhibit I does not fit within any of the hearsay exceptions listed in FRE 803 or 804; it is offered to prove the truth of the matters asserted; it is not properly authenticated; there is no evidence that the handwritten entries are present sense impressions; and there is no evidence that Ms. Smith was the author.

In response, plaintiff argues that the diary: is properly authenticated under FRE 901(2); is not inadmissible hearsay, because it shows Ms. Smith's then existing state of mind under FRE 803(3); and was written under the belief of impending death thus qualifying under FRE 804(b)(2).

In reply, defendants argue that: the pages are offered to prove the truth of the matters asserted in the pages; they are not dying declaration since most of the entries were made months before Ms. Smith died; Ms. Smith's state of mind is irrelevant, except to the extent that it was the result of conduct by Fred Meyer; and there is no evidence that Ms. Smith was the author.

For a document to be properly authenticated by a nonexpert opinion on handwriting, 901(b)(2) requires that the nonexpert's opinion as to the genuineness of handwriting be based upon familiarity with the writing that was not acquired for purposes of the litigation. FRE 901(b)(2). When there is nothing in the record to indicate that the lay witness was familiar with the handwriting at issue outside of his preparation for the instant case, the purported authentication is questionable under FRE 901(b)(2). <u>United States v. Chandler,</u> 2001 WL 201977, 847. Plaintiff has not submitted evidence that plaintiff's attorney was familiar with Ms. Smith's handwriting outside of her preparation for this case. Therefore, the Exhibit is not properly authenticated.

Plaintiff admits that the diary is hearsay. To be admissible, it must meet the five admissibility requirements of 803(3). Under the second requirement, it must be shown that the declarant had no time to reflect. Plaintiff has not submitted evidence to indicate that Ms. Smith did not have time for reflection before writing her thoughts in her diary. Therefore, the Exhibit is not admissible under 803(3).

Under 804(b)(2), a statement under belief of impending death is not excluded by the hearsay rule: 1) if the declarant is unavailable as a witness; and 2) in a civil action or proceeding, the statement is made by declarant while believing that the

declarant's death was imminent and it concerns the cause or circumstances of what the declarant believed to be impending death. See Sternhagen v. Dow Co., 108 F.Supp.2d 1113, 1116-17 (D. Mont. 1999) (The declarant must believe that death is imminent at the time he is making the statement).

The diary entries range from February 6, 2002, to July 26, 2002. Only one entry was made in July. That entry was made three days before Ms. Smith committed suicide and it does not indicate that the author feels that death will occur almost immediately. Therefore, Exhibit I is not admissible under Rule 804(b)(2).

In addition, other unchallenged Exhibits contain the same information that plaintiff is attempting to admit. Therefore, plaintiff's responses to defendants' motion to strike Exhibit I are moot.

In the one instance where information in Exhibit I is not contained in another Exhibit, Plaintiff's Response to Defendants' Concise Statements of Material Facts in Support of Motion Two ¶23, plaintiff fails to show that the statement is being used to prove a state of mind, as opposed to prove the truth of the out of court statement.

Based on the foregoing, Exhibit I is stricken.

## I. FACTS

Janette Smith was a former employee of defendants. (Am. Compl. ¶5). On July 12, 2001, defendants hired Ms. Smith to be a

full time sales associate at their store located in the South Medford Shopping Center. (Am. Compl. ¶5; Dempsey Dep. Ex. 201 (p.3)). On July 12, 2001, Ms. Smith received and signed the Fred Meyer Employee Responsibilities notice, which provided in part:

> The Following Conduct Is Regarded And Accepted As An Employee's Voluntary Resignation (Quit) Of His/Her Employment: 1. Walking off the job.

(Def. Ex. B. pg 2).

During Ms. Smith's employment at the South Medford Jewelry store, Ricardo Salas was the store manager and Kammy Atwood was the assistant store manager. Jessica Berry was a sales associate and co-employee of Ms. Smith. During the same period, Louise Young was a Human Resources Administrator. (Carlson Decl. ¶5; Young Dep. 17:22-18:23).

On December 30, 2001, Ms. Smith had an argument with Ms. Atwood regarding credit for a jewelry sale. After the argument, Ms. Smith told Ms. Berry that she was leaving, and she left work without permission from Mr. Salas or Ms. Atwood. (Lynn Decl. ¶3, Ex. A, ¶8, Young Dep. 69:20-70:18, Ex. 15-B).

On January 2, 2002, Ms. Smith was suspended for 3 days for leaving work without permission. (BOLI Compl. ¶10). On the same day, Ms. Smith submitted a letter titled "Suspension from work" in which she complained about the following: (1) Mr. Salas scheduled her to work on Monday and Tuesday January 1-2, 2002, although her usual schedule was Wednesday-Sunday; (2) Mr. Salas instructed her

not to wear a short skirt and to abide by the dress code; (3) Mr. Salas had not transferred her to the Grants Pass store as he promised; (4) her 3-day suspension; (5) Mr. Salas had commented favorably on her appearance and had invited her to watch his band play during non-working hours; (6) she went on one occasion around October 2001 to watch Mr. Salas' band, and on that occasion she and Mr. Salas kissed and he asked her to accompany him to San Francisco. (Carlson Dep 10:25-15:1; Young Dep Ex. 15). After Ms. Smith asked to be transferred, Mr. Salas continued to make flattering comments about her appearance. (BOLI Compl. ¶7).

On January 2, 2002, Ms. Smith accessed defendants' formal complaint process and complained about her supervisor's alleged sexual harassment. (BOLI Compl. ¶11). Defendants have a policy prohibiting sexual harassment and they make reasonable efforts to prevent sexual harassment. (BOLI Compl. ¶3).

Ms. Smith's January 2, 2002 letter was forwarded for investigation to Jennifer Carlson, Employee Relations Administrator for Fred Meyer Stores, Inc.. Ms. Carlson investigated Ms. Smith's allegations. She interviewed Ms. Smith, Mr. Salas, Ms. Atwood, Ms. Berry, Ms. Young, and Regional Supervisor Bruce Reschke.

By letter dated January 30, 2002, Ms. Carlson advised Ms. Smith of the results of her investigation, responding to each issue. Regarding schedules, she stated that "Fred Meyer does not provide any guarantee of hours or schedules." Regarding the dress

code, she confirmed "that Fred Meyer does maintain enforcement of its dress code policy." Regarding transfer, she reported that there were no positions then open and that "Mr. Salas did inquire on her behalf", but that Mr. Reschke had indicated that "there were at least three other employees with more seniority that would have been extended offers" to transfer first based on seniority. Regarding the suspension, Ms. Carlson clarified that Ms. Smith had been suspended for leaving without following appropriate channels and not because of her confrontation with Ms. Atwood. Regarding the harassment allegations, Ms. Carlson advised Ms. Smith that "the results of the investigation are inconclusive" and that "there is insufficient evidence to draw any conclusion as to the facts." (Carlson Dep. 9:22-21:4, Ex.s 27-30; Young Dep. Ex.s 15, 17). Defendants then invited Ms. Smith to return to work. (BOLI Compl. ¶12).

Following her suspension, Ms. Smith sought a medical leave of absence under the Family Medical Leave Act. Through her counselor, Joan Mindick, she again requested a transfer to the Grants Pass store or another Medford location. (Carlson Dep. 21:50-23:16; Young Dep. Ex. 18). On January 31, 2002, Dr. Dempsey, Ms. Smith's psychiatrist, advised defendants, via facsimile, of Ms. Smith's medical history and suicidal ideation. (Dempsey dep. Ex. 205).

By letter dated February 13, 2002, Ms. Carlson advised Ms. Smith that there were no job openings at the Grants Pass location

or other Medford locations.  In addition, Ms. Carlson advised Ms. Smith that she did not meet the eligibility qualifications for a leave of absence, and she needed to report back to work.  She advised Ms. Smith to contact Mr. Salas by February 18, 2002 regarding her intentions or she would be considered to have "voluntarily resigned" from her employment.  Ms. Carlson further stated that if Ms. Smith did resign, she would be eligible for rehire and would be welcome to apply for any open positions at any Fred Meyer location.  (Carlson Dep. 21:5-9; Young Dep. Ex. 18).

Ms. Smith did not make contact with Mr. Salas as instructed, and she was terminated effective February 22, 2002.  Ms. Smiths' personnel file indicates that defendants classified her as eligible for "rehire."  (Carlson Decl. ¶8, Ex. A).  After her February 22, 2002 termination, Ms. Smith did not apply for any further employment with either Fred Meyer Jewelers or Fred Meyer Stores, Inc..  (Carlson Decl. ¶9).

A full-time position in the Grants Pass store Jewelry Department became available in March 2002.  Once available, a female employee who had been with Fred Meyer Jewelers for six years, and who had requested a transfer to that store multiple times in the past, received authorization to transfer into that position.  (Clark Decl. ¶¶5, 6).  Transfers were made based on seniority.  However, there was no union contract in force that required transfers based on seniority.  (Carlson dep. p. 23).

Ms. Smith committed suicide from an overdose of anti-depressants on or about July 29, 2002. Plaintiff is the personal representative of Ms. Smith's estate. (Am. Compl. ¶¶2, 9; Pl.'s Ex. J).

## II. LEGAL STANDARDS

Pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56 (c); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991). In deciding a motion for summary judgment, the court must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994)(citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. Id.

The moving party bears the initial burden of proof. See Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.), cert. denied, 516 U.S. 987 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact.

<u>Id</u>. "[T]he moving party . . . need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.,</u> 33 F.3d 390, 393 (4th Cir. 1994), <u>cert. denied,</u> 513 U.S. 1191 (1995)(citation omitted); <u>See</u> <u>City of Mt. Pleasant, Iowa v. Associated Electric Co-op, Inc.,</u> 838 F.2d 268, 273-274 (8th Cir. 1988)(it is sufficient for the movant to argue that the record does not contain an issue of fact and to identify that part of the record that supports that assertion).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. <u>Allen v. City of Los Angeles,</u> 66 F.3d 1052 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. <u>Id</u>.

If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>Auvil v. CBS "60 Minutes",</u> 67 F.3d 816 (9th Cir. 1995), <u>cert. denied,</u> 517 U.S. 1167 (1996). The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings. <u>Leonard v. Clark,</u> 12 F.3d 885, 888 (9th Cir. 1994). Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. <u>Id</u>.

In addition to the requirements of Fed.R.Civ.P. 56(e), parties must also comply with the requirements set forth in Local Rule

56.1. Local Rule 56.1(b) provides in relevant part that:

>    (2) After responding to the movant's numbered paragraphs, the responding party may then articulate other relevant material facts which are at issue, or are otherwise necessary for the court to determine the motion for summary judgment.

Local Rule 56.1(d) sets forth the requirements for a party's concise statement of facts, and requires a citation to particular evidence supporting a party's statement or denial of a material fact. Local Rule 56.1(e) provides in part that "the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

When a party relies on deposition testimony or other evidence, that party must designate specific facts in the deposition or document which support that there is a genuine issue for trial. See Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir. 1988). The court is not required to search the record to determine whether any factual disputes exists, and an opposing party's failure to designate and reference triable facts, in light of the requirements of Fed.R.Civ.P. 56(e), Local Rule 56.1, and governing precedent may be fatal to the opposition. See Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C. Cir. 1988).

### III. DISCUSSION

Defendants move for summary judgment arguing that:

1) plaintiff's lawsuit is barred by the exclusive remedy provisions

of Oregon's Workers' Compensation Act, and no exception to the exclusivity provisions exist in this case;

2) plaintiff's wrongful death claim is purely statutory, and ORS 30.020(1) provides that a wrongful death claim is subject to the same defenses as a negligence claim brought by the decedent had she lived;

3) defendants are not liable for any alleged intentional injury to decedent;

4) plaintiff's allegations are without merit - what little conduct is alleged is either not related to sex, not unwelcome, and/or not severe or pervasive;

5) no prima facie case exists for alleged sex harassment;

6) there was a prompt and thorough investigation by defendants;

7) the evidence disproves plaintiff's alleged retaliation complaint; and

8) there is an adequate statutory remedy for plaintiff's wrongful termination claim, and there is no causal connection.

In response, plaintiff argues that:

1) plaintiff's wrongful death claims derive from Title VII, ORS 659A, and her common law wrongful discharge claim are not preempted;

2) plaintiff has a prima facie case for sexual harassment;

3) plaintiff has a claim of quid pro quo sexual harassment;

4) plaintiff has a prima facie case for retaliation; and

5) plaintiff's wrongful discharge claim is proper under <u>Holien</u>;

In reply, defendants argue that:

1) plaintiff's claim is barred by the exclusive remedy provision of Oregon's workers compensation laws;

2) plaintiff fails to rebut defendants' proof that her allegations are either conclusory, are not based on sex, and/or do not constitute severe or pervasive conduct;

3) plaintiff has not presented proof of favorable or adverse treatment conditioned on acceptance or rejection of sexual advances;

4) plaintiff fails to produce any evidence of retaliation;

5) there is no causal nexus between protected activity - complaints of belief of harassment and retaliation - and the complained of action - Ms. Smith's termination; and

6) defendants did not affirmatively terminate Ms. Smith.

**Title VII and ORS 659.030 Sex Discrimination and Harassment Claims**

Since ORS Chapter 659A is patterned after Title VII, federal cases are instructive in interpreting its provisions. <u>See</u> <u>A.L.P. Inc. v. Bureau of Labor and Industries,</u> 161 Or.App. 417, 422 (1999)(ORS 659.030 is patterned after Title VII and therefore federal cases are instructive)(citing <u>Mains v. II Morrow, Inc.,</u> 128 Or.App. 625, 634 (1994). Title VII of the Civil Rights Act makes it illegal for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of

employment.   42 U.S.C. §§ 2000e(a)(1), 2000e-2(a), 2000e-5.   A plaintiff may show a violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.   <u>Sischo-Nownejad v. Merced Community College Dist.,</u> 934 F.2d 1104, 1109 (9th Cir. 1991). Plaintiff alleges a claim for hostile work environment.

A hostile work environment exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment. <u>Faragher v. Boca Raton,</u> 524 U.S. 775, 786 (1998); <u>Meritor Savings Bank v. Vinson,</u> 477 U.S. 57, 65-67 (1986).  The conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment; an environment a reasonable person in the plaintiff's position would find hostile or abusive considering all the circumstances.  <u>Faragher,</u> 524 U.S. at 787; <u>Oncale v. Sundowner Offshore Services, Inc.,</u> 523 U.S. 75, 81 (1998); <u>Harris v. Forklift Systems, Inc.,</u> 510 U.S. 17, 21-22 (1993); <u>Ellison v. Brady,</u> 924 F.2d 872, 879 (9th Cir. 1991); <u>Steiner v. Showboat Operating Company,</u> 25 F.3d 1459, 1462, <u>cert. denied,</u> 513 U.S. 1082 (1995). The assessment of whether an environment is objectively hostile "requires careful consideration of the social context in which the particular behavior occurs and is experienced by its target." <u>Oncale,</u> 523 U.S. at 81.

In addition, the victim must perceive the environment as hostile; the conduct must actually alter the conditions of the victim's employment. <u>Harris,</u> 510 U.S. at 21-22. The conduct does not have to seriously effect the victim's psychological well being. <u>Id</u>. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for psychological injury. <u>Id</u>.; <u>Fuller v. City of Oakland, California,</u> 47 F.3d 1522, 1526 (9th Cir. 1995) (citation omitted). It is enough that the hostile conduct pollutes the workplace, making it more difficult for the victim to do her job, take pride in her work, and to desire to stay in her position. <u>Steiner,</u> 25 F.3d at 1462.

Whether an environment is hostile or abusive depends on all the circumstances including; the frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>Clark County School Dist. v. Breeden,</u> 532 U.S. 268, 271 (2001); <u>Harris,</u> 510 U.S. at 23. The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness of frequency of the conduct. <u>Ellison,</u> 942 F.2d at 878. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not qualify as changes in the terms and conditions of

employment.  <u>Breeden,</u> 532 U.S. at 271; <u>Faragher,</u> 524 U.S. at 788.

Plaintiff alleges that Ms. Smith was employed by defendants from July 12, 2001, until her working conditions became so hostile and intolerable that she became too ill to return to work and was discharged in January 2002.  Plaintiff alleges that the conditions were hostile, because Mr. Salas made frequent sexual advances to Ms. Smith, that these advances made her uncomfortable enough to ask to be transferred, and that she filed a complaint with defendants, which resulted in termination of her employment.

Defendants argue that plaintiff has not established a prima facie case since the conduct Ms. Smith complained about was not severe and pervasive, unwelcome, or based on sex, and that defendants promptly and thoroughly investigated Ms. Smith's complaint.

Shortly after Ms. Smith's hire, she and Mr. Salas kissed outside of work.  Ms. Smith did not indicate that the kiss was not consensual.  After that incident, she informed Mr. Salas that she did not want a relationship with him and felt uncomfortable with his attention.  Mr. Salas continued to make frequent, flattering comments about Ms. Smith's appearance.

Plaintiff alleges an isolated incident, kissing.  Plaintiff failed to indicate that it was not consensual, thus it was not extremely serious and does not qualify as changes in the terms and conditions of employment under <u>Breeden</u>.  Mr. Salas' physical sexual

advances toward Ms. Smith appear to have stopped when she informed him that she did not want a sexual relationship with him. The frequent, flattering comments that Mr. Salas made to Ms. Smith were not alleged to have been physically threatening or humiliating, but appear to be a mere offensive utterance that would not unreasonably interfere with an employee's work performance. Plaintiff has not shown that Ms. Smith was the sole recipient of Mr. Salas' flattering comments about appearance, nor has plaintiff given any specific language used in the comments that would be objectively offensive, hostile, or abusive.

Ms. Smith did not complain to defendants regarding Mr. Salas' conduct until January 2, 2002, after she had been suspended for leaving work without permission, and about three months after the alleged kissing incident occurred. Plaintiff does not cite specific evidence indicating that Ms. Smith was subjected to an abusive or hostile working environment. Therefore, plaintiff has not proven that Mr. Salas' conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. See Weiss v. Coca-Cola Bottling Co. Of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (no actionable sexual harassment where supervisor asked plaintiff for dates, put his hand on her shoulder several times, placed "I love you" signs in her work area, and attempted to kiss her in a bar); See also Saxton v. American Telephone & Telegraph Co., 10 F.3d 526, 528, 534-535 (7th Cir. 1993)(no actionable sexual

harassment where supervisor placed his hand on plaintiff's leg above the knee several times, rubbed his hand along her inner thigh once, and pulled her into the doorway and kissed her for several seconds).

Plaintiff further argues that Ms. Smith was subjected to quid pro quo harassment, when Ms. Smith rejected sexual advances from Mr. Salas she was penalized. Ms. Smith's BOLI complaint indicates that when she informed Mr. Salas that she did not want a sexual relationship with him, he continued to make flattering comments about her appearance. Ms. Smith's BOLI complaint also states that she was suspended for leaving work without permission, an offence for which she could have been fired. This indicates that not only was Ms. Smith not penalized, she was treated favorably after committing an offence for which she could have been discharged. Further, defendants classified Ms. Smith as eligible for rehire after she failed to return to work. Plaintiff has not given any evidence in support of this claim. Therefore, defendants are entitled to summary judgment on this claim. See Burns v. Snow, 2005 WL 1140742, 10 (10th Cir. (Colo.)) (former US Treasury Department employee failed to prove quid pro quo sexual harassment when she failed to show that she was promised tangible job benefits if she dated her supervisors or experienced reprisal when she refused to have a relationship with them and summary judgment was appropriate).

The court finds that plaintiff has not established that Ms. Smith was exposed to a hostile or abusive working environment, or quid pro quo harassment.  Therefore, defendants motion for summary judgment on plaintiff's title VII and ORS 659A claims for gender discrimination and sexual harassment should be granted.

**Title VII Retaliation Claim**

To make out a prima facie case of retaliation, plaintiff must show: 1) she was engaged in a protected activity; 2) there was an adverse employment decision; and 3) a causal link between the protected activity and the adverse employment decision.  Wallis v. J.R. Simplot, 26 F.3d 885, 891 (9th Cir. 1994).  The Ninth Circuit has adopted the standard from the EEOC compliance manual in defining an adverse employment action.  Vasquez v. County of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2004).  "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." Id.  This standard is both subjective in that it

> speaks of any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.  Including behavior of the charging party in the standard removes it from the hypothetical 'reasonable employee' approach and makes it more subjective.  Of course, it is not entirely subjective as the conduct must be 'reasonably likely' to deter the protected activity, even by the charging party.

Id.

Causation, sufficient to establish a prima facie case of unlawful retaliation, may be inferred from the proximity in time between the protected action and the alleged retaliation. <u>Miller v. Fairchild Industries, Inc.,</u> 797 F.2d 727, 731 (9th Cir. 1986)(citations omitted). A plaintiff may prove causation by presenting direct evidence of a retaliatory motive. <u>Id</u>

A hostile work environment claim may also be the basis for a retaliation claim under Title VII. <u>Ray v. Henderson,</u> 217 F.3d 1234, 1244-1245 (9th Cir. 2000). Harassment in retaliation for engaging in a protected activity can satisfy the adverse employment action prong when the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Id</u>. at 1245 (citation omitted).

The harassment must be both objectively and subjectively offensive. <u>Id</u>. Whether an environment is hostile or abusive depends on all the circumstances including; the frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>Id</u>.

Once the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to defendants to articulate a legitimate, nonretaliatory explanation for its

decisions.  <u>Yartzoff v. Thomas,</u> 809 F.2d 1371, 1376 (quoting <u>Miller</u>
<u>v. Fairchild Indus., Inc.,</u> 797 F.2d 727, 731 (9th Cir. 1986).  The
defendant's evidence need only raise a genuine issue of fact as to
whether it discriminated against the plaintiff.  <u>Id</u>. (quoting <u>Texas</u>
<u>Dep't of Community Affairs v. Burdine,</u> 450 U.S. 248, 254-55 (1981).

Ms. Smith engaged in the protected activity of filing a
complaint with defendants after she was suspended.  Plaintiff has
not shown that defendants subjected Ms. Smith to an adverse
employment decision.  Ms. Smith was given favorable treatment when
she left work without permission, an offence for which she could
have been terminated, and defendants chose to suspend her rather
than fire her.  Ms. Smith chose not to return to work after her
suspension was over, and after defendants informed her that the
results of their investigation of her claim were inconclusive and
they would like her to return to work.  Plaintiff has also not
proven that there was a causal link between Ms. Smith filing the
complaint, defendants suspending her for three days, and defendants
not transferring her to another store.  Even if plaintiff had
presented a prima facie case, defendants have articulated
legitimate, nonretalitory reasons for their employment decisions
regarding Ms. Smith.

The court finds that plaintiff has not established a prima
facie retaliation case.  Therefore, defendants motion for summary
judgment on plaintiff's title VII and ORS 659A retaliation claims

should be granted. <u>See</u> <u>Yartzoff</u>, 809 F.2d at 1378 (summary judgment on retaliation claim was appropriate when plaintiff failed to establish a prima facie case).

**Oregon Wrongful Discharge Claim**

Plaintiff argues that defendants' conduct was in retaliation for Ms. Smith's assertion of her protected right to work in an environment free from sexual harassment and demeaning behavior based on one's sex, and as such defendants' conduct constitutes a wrongful discharge. Plaintiff further argues that the state and federal remedies do not capture the personal nature of the injury done to a wrongfully discharged employee as an individual and the remedies provided by the statutes fail to appreciate the relevant dimensions of the problem.

Defendants argue that, because Ms. Smith was asked to return to work on two separate occasions and did not, Ms. Smith voluntarily resigned, thus she was not terminated by defendants. Therefore, plaintiff does not have a wrongful discharge claim to be compensated by either federal or state statutes.

Ms. Smith did have a right to be free from sexual harassment and demeaning behavior based on her sex in her place of work. However, plaintiff has failed to prove that Ms. Smith was in fact subjected to sexual harassment and demeaning behavior based on her sex while she was employed by defendants. Therefore, Ms. Smith was not fired or forced to quit; she voluntarily resigned when she

refused to return to work after being asked twice, and refused to contact her supervisor to inform him when she would be returning to work.

The court finds that plaintiff has not proven that Ms. Smith was wrongfully discharged. Therefore, defendants motion for summary judgment on plaintiff's wrongful discharge should be granted. <u>See</u> <u>Morrow v. II Morrow, Inc.,</u> 139 Or.App. 212 (1996) (summary judgment was appropriate where plaintiff failed to show intolerable working conditions).

**Wrongful Death Claim**

In Oregon, wrongful death claims are "purely statutory" and "exist only in the form and with the limitations chosen by the legislature." <u>Greist v. Phillips,</u> 322 Or 281, 294, 906 P2d 789 (1995) (citations omitted). Oregon's wrongful death statute provides in part:

> When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, ... *may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived,* against the wrongdoer for an injury done by the same act or omission.

ORS 30.020(1) (emphasis added).

Ms. Smith was not subject to sexual harassment, retaliated against, or wrongfully terminated, thus, Ms. Smith would not have

had an action against defendants had she lived.  Therefore,

plaintiff may not maintain an action against defendants.  See Storm

v. McClung, 334 OR 210, (2002) (decedent's personal representative

acquires the rights and limitations to those rights that the

decedent would have possessed); see also Kilminster v. Day

Management Corp., 323 Or 618 (1996) (decedent's personal

representative only has a right to sue decedent's employer for

negligent wrongful death if decedent had the right).

In the event that plaintiff would have been able to maintain

an action, defendants argue that since plaintiff admits that the

alleged events that gave rise to this claim occurred during the

course of her employment, ORS 656.018, workers compensation, would

apply as plaintiff's exclusive remedy.  ORS 656.018(1)(a) states:

> The liability of every employer who satisfies the duty
> required by ORS 656.017(1) *is exclusive and in place of
> all other liability* arising out of injuries, diseases,
> symptom complexes or similar conditions arising out of
> and in the course of employment that are sustained by
> subject workers, the workers' beneficiaries and anyone
> otherwise entitled to recover damages from the employer
> on account of such conditions or claims resulting
> therefrom, ... except as specifically provided otherwise
> in this chapter.

ORS 656.018(1)(a) (emphasis added).

Defendants also argue that plaintiff would be barred from

bringing the wrongful death claim under any other statute or common

law.  ORS 656.018(2) states:

> The rights given to a subject worker and the
> beneficiaries of the subject worker under this chapter
> for injuries, diseases, symptom complexes or similar

conditions arising out of and in the course of employment
are *in lieu of any remedies they might otherwise have* for
such injuries, diseases, symptom complexes or similar
conditions against the worker's employer *under ORS
654.305 to 654.336 or other laws, common law or statute*,
except to the extent the worker is expressly given the
right under this chapter to bring suit against the
employer of the worker for an injury, disease, symptom
complex or similar condition.

ORS 656.018(2) (emphasis added).

Plaintiff fails to show that an exception to the exclusivity
provision exists in this case. See Hanson v. Versarail Systems,
Inc., 175 Or.App. 92 (2001) (plaintiff failed to show that
exception to exclusive remedy provisions of the workers'
compensation laws applied and summary judgment was appropriate).

The court finds that plaintiff has not proven that Ms. Smith
would have had a cause of action against defendants had she lived,
or that she would have had a remedy. Therefore, defendants motion
for summary judgment on plaintiff's wrongful death claim should be
granted.


## IV.  ORDER

Based on the forgoing, it is ordered that defendants' motion to
strike (#78) is granted and Exhibits B and I are stricken.

## V.  RECOMMENDATION

Based on the foregoing, it is recommended that defendants'
motions for summary judgment (#55, #60) be granted and a judgment
entered dismissing the case.

FINDINGS AND RECOMMENDATION - 28

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this        23        day of June, 2005.


                        /s/

UNITED STATES MAGISTRATE JUDGE